**ELECTRONIC DATA SYSTEMS FEDERAL CORPORATION, et al., Appellants,**

v.

**GENERAL SERVICES ADMINISTRATION BOARD OF CONTRACT APPEALS, et al., Appellees.**

Appeal No. 86–974.
Misc. Nos. 103, 104 and 108.

United States Court of Appeals, Federal Circuit.

May 28, 1986.

I. Michael Greenberger, Shea & Gardner, Washington, D.C., argued for U.S. Government Printing Office. With him on brief was William S. Moore. Grant G. Moy, Jr., General Counsel, Washington, D.C., was also on brief.

Ronald A. Schechter, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee, the U.S. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett.

Donald C. Holmes, Jones, Day, Reavis & Pogue, Washington, D.C., argued for appellant, Electronic Data Systems. With him on the brief, were Erwin N. Griswald, Joseph D. West, Stephen S. Kaye and Michael A. Gordon, Washington, D.C., and Richard P. Shlakman and James D. Duffey, Bethesda, Md.

Arthur Lazarus, Jr., Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., argued for AT & T Technologies. With him on brief, were Paul Shnitzer and Carl J. Peckinpaugh, Washington, D.C. and Robert Y. Peters, Greensboro, N.C., of counsel.

Irwin Goldbloom, Latham, Watkins & Hills, Washington, D.C., argued for Xerox Corp. With him on brief was Franklin G. Snyder.

Thomas F. Williamson, Morgan, Lewis & Bockius, Washington, D.C., argued for Volt Information Systems.

Before BALDWIN, NIES and ARCHER, Circuit Judges.

NIES, Circuit Judge.

On May 2, 1986, this court issued the following order in connection with petitions for mandamus and a transferred appeal which had been consolidated for disposition on an expedited basis:

This case raises an issue of the statutory protest authority of the General Ser-

vices Board of Contract Appeals (GSBCA) under the Brooks Act, 40 U.S.C. § 759, as amended by the Competition in Contracting Act, Pub.L. 98–369 (CICA), now 40 U.S.C. § 759(h). Xerox Corporation filed a protest with GSBCA directed to a contract which the Government Printing Office (GPO) entered with Electronic Data Systems Federal Corporation (EDS) for integrated printing or publishing services for the Department of Army. EDS and GPO moved to dismiss for lack of jurisdiction in GSBCA on the ground that the protested contract was not a procurement within the scope of the Brooks Act and had not been conducted thereunder. A procurement under the Brooks Act is one conducted by authority of the General Services Administration for the acquisition of automatic data processing equipment (ADPE). By decision dated February 4, 1986, GSBCA held that it had jurisdiction over the protest, and, in the course of proceedings, it would decide whether the procurement *should* have been conducted under the Brooks Act. In the interim, by an order of February 6, 1986 (orally given February 5), GSBCA suspended the contract and precluded GPO or the Army from satisfying any of the Army's requirements within the scope of the suspended contract.

An expedited hearing was held by this court on April 10, 1986, on petitions for mandamus filed by the government (Justice), by GPO (represented by private counsel) and by EDS which were consolidated with a hearing on an appeal involving the same controversy. The appeal arose from a suit which had been filed in the District Court for the District of Columbia, No. 86–0353 (D.D.C.) by EDS seeking to restrain GSBCA from proceeding with the protest. The district court entered a restraining order but held that the litigation was an interlocutory appeal of the GSBCA decision. Accordingly, the district court transferred the case to this court pursuant to 28 U.S.C. § 1631 because this court's exclusive appellate jurisdiction over GSBCA

decisions (28 U.S.C. § 1295(a)(10)) also gave this court, under D.C. Circuit precedent, jurisdiction over interlocutory matters. *Telecommunications Research & Action v. FCC,* 750 F.2d 70 (D.C.Cir. 1984). On March 3, 1986, this court (Markey, C.J.) ordered that the restraining order issued by the district court be kept in effect pending resolution of this appeal.

We conclude that the Federal Circuit has jurisdiction over these proceedings under 28 U.S.C. § 1292(c)(1), as an appeal from an injunctive order issued by a forum over which this court has appellate jurisdiction. We further conclude that a necessary predicate to establishing protest jurisdiction in GSBCA under the Brooks Act is a procurement of automatic data processing equipment conducted or authorized by GSA under the Brooks Act. Since it is undisputed that GPO conducted this procurement without reference to the Brooks Act or GSA, and has received no delegation of procurement authority from GSA related to the subject procurement, we hold that GSBCA had no jurisdiction over the subject protest.

Accordingly, *it is ordered* that:

1. The decision of GSBCA dated February 4, 1986, and the order of February 6, 1986, suspending the subject contract are vacated; and

2. The case is remanded to GSBCA with a direction to dismiss the subject protest.

An opinion amplifying the statutory interpretation underlying this order will be issued shortly.

This opinion provides the amplification of the facts and legal analysis underlying the May 2, 1986, order.

I.

This controversy arises out of a GPO procurement for integrated printing and publishing services to prepare, print and distribute Army technical and training manuals. The procurement was conducted pursuant to GPO's Request for Proposals

No. 600–S issued on December 4, 1984. Following a year of competitive negotiations, on December 16, 1985, GPO received best and final offers from AT & T Technologies, Inc. (AT & T), Electronic Data Systems Federal Corporation (EDS), Volt Information Sciences, Inc. (Volt), and Xerox Corporation (Xerox). On January 9, 1986, GPO awarded the 600–S contract to EDS.

On January 9, 1986, AT & T challenged GPO's award of the contract to EDS by filing a protest with the General Accounting Office (GAO) pursuant to 31 U.S.C. §§ 3551–3556 (Supp. II 1984). On January 16 and 20, 1986, respectively, Xerox and Volt each filed protests (GSBCA Nos. 8333–P and 8336–P) with GSBCA pursuant to 40 U.S.C. § 759(h) (Supp. II 1984).[1] AT & T, GSA and EDS subsequently intervened in the GSBCA proceeding. The Department of the Army also sought to intervene but was allowed only to provide co-counsel to GPO.[2] GAO then dismissed AT & T's protest in deference to the GSBCA protests, noting that AT & T could refile at GAO if GSBCA ruled that it lacked jurisdiction.[3] The various protests alleged, *inter alia,* that the contract is one for automatic data processing equipment (ADPE) which *should have been procured* under the Brooks Act and that GPO also violated other statutes, regulations, and its own Request for Proposals in making the award to EDS.

GPO filed a motion to dismiss the protest on the ground that GSBCA lacked jurisdiction since the procurement was not conducted under the Brooks Act. GPO further contended that the contract was for printed materials, not for ADP equipment or services, and that the contractor's use of ADPE in performing the contract did not bring it within the Brooks Act. Upon GSA's intervention and endorsement of the position of the protestors against GPO, another provision of the Brooks Act, 40 U.S.C. § 759(g) (1982), became germane to this controversy. Under § 759(g), when a dispute arises between GSA and an agency over the applicability of the Brooks Act to a particular procurement or proposed procurement, the Office of Management and Budget (OMB) (formerly the Bureau of the Budget) shall resolve such disputes. OMB, which is part of the Executive Office of the President, is specifically allowed to limit GSA's authority under the Brooks Act by exercising policy and fiscal control over the actions of the GSA Administrator. GPO made a request to OMB for resolution of its dispute with GSA on February 3, 1986.

On February 4, GSBCA denied GPO's above-mentioned motion to dismiss for lack of jurisdiction, reasoning that GSBCA, like other tribunals, had power to determine its own jurisdiction. *Xerox Corp. & Volt Information Sciences, Inc.,* Nos. 8333–P, 8336–P, slip op. at 13 (GSBCA February 4, 1986) (hereinafter cited as February 4 Order). In the course of the protest, GSBCA stated, it would resolve the question of its jurisdiction over the particular contract, that is, whether it *should* have been a Brooks Act contract. On February 5, GSBCA ruled that, in accordance with § 759(h)(3)(B), the contract between GPO and EDS was suspended pending resolution of the protest. That oral order was issued as a written opinion dated February 6, 1986. *Xerox Corp. & Volt Information Sciences, Inc.,* Nos. 8333–P, 8336–P (GSBCA February 6, 1986).

On February 7, 1986, EDS filed suit in the United States District Court for the

---

1. Both of these protest provisions were enacted as part of the Competition in Contracting Act, Pub.L. 98–369, 98 Stat. 494 (1984), herein referred to as CICA.

2. The Army was eventually allowed to intervene by GSBCA on February 14, 1986, after the date of the decisions under review.

3. 31 U.S.C. § 3552 (Supp. II 1984) provides that "[a]n interested party who has filed a protest under ... 40 U.S.C. 759(h) with respect to a procurement ... may not file a protest with respect to that procurement under this subchapter." The House Conference Report, H.R.Rep. No. 861, 98th Cong., 2d Sess. 1435, *reprinted in* 1984 U.S.Code Cong. & Ad.News 697, 1445, 2123, confirms that a disappointed bidder "may not protest the same action to both the GAO and the GSA board."

District of Columbia seeking a temporary restraining order and preliminary injunction against the GSBCA and GSA on the ground that GSBCA acted beyond its jurisdiction. GPO moved to appear as *amicus curiae* in support of EDS, and AT & T, Volt and Xerox moved to intervene. The district court entered a temporary restraining order that stayed the GSBCA proceedings and reinstated performance of the 600–S contract on February 19, 1986, 629 F.Supp. 350. Two days later, the district court decided it lacked jurisdiction and transferred the case to this court pursuant to 28 U.S.C. § 1631. However, the district court ordered that its temporary restraining order remain in effect during the transfer process.

On February 28, 1986, EDS and GPO filed in this court petitions for writs of mandamus against GSBCA. On March 3, 1986, this court extended the district court's restraining order. This court consolidated the transferred appeal with the petitions for writ of mandamus of GPO and EDS on March 14, 1986 and with a later petition of the United States on March 24, 1986. As a result of the consolidation, the appellants/petitioners include EDS, GPO and the United States; the appellees/respondents include Volt, Xerox and AT & T—the protestors.

## II.

### *Issues*

1. Is the matter raised by appellants/petitioners appealable at this time or properly a matter for mandamus?

2. Did the GSBCA have jurisdiction over the protest?

## III.

### *Appealability of Interlocutory Decisions and Orders of GSBCA*

#### A.

All of the parties to this case acknowledge that this court possesses exclusive jurisdiction pursuant to 28 U.S.C. § 1295(a)(10) (1982) over final decisions of

an agency board of contract appeals, including GSBCA decisions involving a Brooks Act protest. The GSBCA decisions before us are not, however, final decisions resolving the merits of the protest, which would unquestionably be covered by § 1295(a)(10).

The federal courts of appeals also are expressly granted jurisdiction over appeals from certain types of interlocutory orders as set forth in 28 U.S.C. § 1292 (1982 & Supp. II 1984). In relevant part, § 1292 provides:

> (a) [T]he courts of appeal [other than the Federal Circuit] shall have jurisdiction of appeals from:
>
> (1) Interlocutory orders of the district courts of the United States ... granting ... injunctions.
>
> \* \* \* \* \* \*
>
> (c) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—
>
> (1) of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title.

A case before GSBCA is a "case over which [the Federal Circuit] would have jurisdiction of an appeal under § 1295." Thus, this court has jurisdiction of this appeal from the GSBCA if an interlocutory order or decree "described in § 1292(a)(1)" is the basis for the appeal.

The parties offer different statutory interpretations with respect to the meaning of the phrase in § 1292(c)(1): "described in subsection (a)." That phrase, per appellants, should be interpreted to mean "described" in the sense of the nature of the order, that is, the order must be one "granting, continuing, modifying, refusing or dissolving injunctions." On the other hand, per protestors, it means that in addition to being an injunctive type order, the order must have been issued by a district court. For reasons which will become apparent, we conclude that the subject phrase

in § 1292(c)(1) refers only to the nature of the order.

There is little in the way of legislative history of the Federal Courts Improvement Act of 1982 (FCIA), Pub.L. No. 97–164, 96 Stat. 27, which addresses this question. However, the Senate Report does contain the following explanation:

> Section 1292 of Title 28, United States Code, currently gives regional courts of appeals jurisdiction of interlocutory orders of the district courts.... [T]he Bill [FCIA] amends this section to give the Court of Appeals for the Federal Circuit jurisdiction of interlocutory appeals *in cases* that will otherwise come to it on appeal. [Emphasis added.]

S.Rep. No. 275, 97th Cong., 1st Sess. 18 (1981), *reprinted in* 1982 U.S.Code Cong. & Ad.News 11, 28 (emphasis added). Since the cases over which the Federal Circuit has jurisdiction include those not only from district courts, as specified in § 1292(a), but also, *inter alia,* from the United States Court of International Trade and the United States Claims Court, a restrictive reading to limit review only to injunctions from the district courts appears entirely inappropriate. There is no evidence that Congress intended the Court of International Trade (an Article III court) or the Claims Court (an Article I court) to be excluded from an appellate review in connection with injunctive orders, and this court has exercised jurisdiction to review injunctive orders of both courts routinely. Thus, in *Zenith Radio Corp. v. United States,* 710 F.2d 806 (Fed.Cir.1983), this court reviewed the denial of a preliminary injunction by the Court of International Trade in an antidumping action. Similarly, this court has reviewed injunctions in cases from the Claims Court, for example, in *ATL, Inc. v. United States,* 736 F.2d 677 (Fed.Cir.1984) involving a bid protest.

■ Thus, we reject the interpretation that "described in subsection [1292](a)" limits us to injunctions appealed from district courts. Injunctive orders from any tribunal within our exclusive appellate jurisdiction fall within the jurisdiction granted to this court by § 1292(c)(1).

Protestors next argue that the words in § 1295(a)(10) granting this court appellate jurisdiction over boards of contract appeals give us jurisdiction to review only "an appeal from a *final* decision" of these boards. Regardless of our jurisdiction over appeals from interlocutory orders of other forums, per protestors, a *final* board decision is necessary to invoke our jurisdiction.

Contrary to this argument, the "final decision" language in § 1295(a)(10) has no significance with respect to restricting our jurisdiction under § 1292(c)(1). All grants of jurisdiction to this court in § 1295 are phrased in terms of "final" decisions or orders of the various forums which we review, e.g., § 1295(a)(5): "of an appeal from a *final decision* of the Court of International Trade." (Emphasis added.) Indeed, comparable language is found in § 1291, with respect to other circuits, i.e., "final decisions of district courts are made subject to review."

■ Thus, we conclude that if an order of the GSBCA is an interlocutory order granting an injunction within the meaning of that phrase in § 1292(a)(1), such order is within the scope of review granted to this court by § 1992(c)(1). We turn to the question whether the subject order is an injunction.

### B.

The Supreme Court has stated that in determining whether a particular order is injunctive in nature, a court of appeals "is not limited to the terminology used." Rather, it is necessary to look to the substantive effect of the order. *Ettelson v. Metropolitan Life Insurance Co.,* 317 U.S. 188, 192, 63 S.Ct. 163, 165, 87 L.Ed. 176 (1942); *Investment Co. Institute v. Federal Deposit Insurance Corp.,* 728 F.2d 518, 522 (D.C.Cir.1984).

On February 5, 1986, the GSBCA issued an oral order, prior to a decision on the merits, which suspended GPO's procurement authority and, further, expressly pre-

cluded "either GPO or the Army from satisfying any of the requirements which would otherwise be satisfied under the suspended procurement." It is this order, which was embodied in written form on February 6, which appellants assert is injunctive in nature.

Appellants argue that because the February 6 order is a mandatory prohibition against GPO and the Army to refrain from certain acts, the order is in the nature of an injunction, citing 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2941, at 361 (1973); 2 J. Moore, *Moore's Federal Practice*, § 65.21, at 65–152 (1986); *see also Aberdeen & Rockfish Railroad Co. v. SCRAP*, 422 U.S. 289, 307–08, 95 S.Ct. 2336, 2349–50, 45 L.Ed.2d 191 (1975) (order that "directed" an agency "to perform certain acts" and having "coercive" effect "bring[s] the order ... within the meaning of the word 'injunction'"). The subject order, as appellants point out, did not simply suspend the GPO–EDS contract, but completely prohibited any procurement falling within the scope of the suspended contract. It is also uncontroverted that much of the contract is divorced from any connection to ADPE. Finally, appellants assert that the ultimate relief sought by the protest is permanent termination of authority to proceed with performance of the 600–S contract and that the interim order grants some of that relief. Per appellants, an interlocutory order which grants temporarily some of the injunctive relief which may ultimately be granted on the merits falls within the category of an appealable interlocutory order granting an injunction, citing *International Products Corporation v. Koons*, 325 F.2d 403 (2d Cir.1963).

Protestors, on the other hand, argue that the board's suspension order is not an injunction but a congressionally mandated stay. Unlike a preliminary injunction, per protestors, the suspension order operates for a brief finite period, usually no more than about 40 days. Given only a short fixed period of its effect, protestors analogize the order to an unappealable temporary restraining order, rather than to an appealable preliminary injunction.

A fixed period is not expressly stated in the statute for suspension orders issued during proceedings, but rather results as a practical matter from the requirement in the statute that proceedings must generally be concluded within 45 days. Protestors point out that suspension orders are to be granted in almost all cases and that the board has very little discretion in denying them. Suspension orders are mandatory, unless certain narrow circumstances are present, and, per protestors, are unlike injunctive orders which depend on the exercise of discretion.

Finally, protestors argue that, as a matter of policy, suspension orders should not be treated as preliminary injunctions. If such orders are appealable, the parties to a protest would be subjected to the burden of pursuing the proceedings before the board at the same time as the suspension order may be challenged before this court.[4]

In view of these considerations, the protestors argue that Congress must have intended to preclude review of suspension orders.

### C.

On the issue of the injunctive nature of the February 6, 1986, order, we must agree with the appellants. Protestors' argument that GSBCA had little discretion in issuing the order does not resolve

---

4. Protestors also assert that appellants did not, in fact, appeal the February 6, 1986, order in addition to the GSBCA decision of February 4, 1986, on jurisdiction. EDS asserts that it specifically sought review of the order in the district court proceedings. The district court memorandum opinion of February 19, 1986, does state that EDS claims "that the GSBCA's ... suspension of this contract under the Brooks Act [is] unlawful." The district court restrained the sus-

pension order "to permit GPO and the Army to satisfy any of the Army's requirements." At this stage of proceedings, the suspension order and the question of GSBCA jurisdiction are inextricably intertwined. In any event, the government moved within the statutory appeal period to file a specific appeal of that order if appropriate and necessary. That motion is mooted by our holding that the order is before us.

the question of whether it is injunctive in nature. Moreover, that argument addresses only the portion of the order having the effect of suspension of the contract. It does not take into account its full scope which includes a provision precluding GPO and the Army "from satisfying any of the requirements which would otherwise be satisfied under the suspended procurement" and the refinement that application had to be made to GSBCA to secure any exception to that prohibition. The subject order goes beyond any Congressionally required "stay." Further, protestors' arguments with respect to policy and their perceived intent of Congress are without independent support and are simply reworkings of their statutory analysis.

The injunctive nature of the February 6 order appears to us to be self-evident and incontrovertible. The order not only restrains specific acts by GPO and the Army, but also temporarily grants part of the ultimate relief sought by the protest, and, thus, is an injunction in the most "ordinary understanding of the word." *City of Morgantown v. Royal Insurance Co.*, 337 U.S. 254, 258, 69 S.Ct. 1067, 1069, 93 L.Ed. 1347 (1949); *see also Switzerland Cheese Assn. v. E. Horne's Market, Inc.*, 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966); *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955); *Investment Co. Institute v. Federal Deposit Insurance Corp.*, 728 F.2d at 522 ("Order was unambiguously a categorical injunction."); 9 J. Moore & B. Ward, *Moore's Federal Practice*, ¶ 110.20[1] (2d ed. 1985) and cases cited therein.

Accordingly, we hold that the subject order is appealable as of right under 28 U.S.C. § 1292(c)(1). We need not address the alternative grounds put forth by appellants for establishing jurisdiction in this court.

### D.

Because this court possesses jurisdiction with regard to the suspension order, it "may properly, indeed must, review the authority underlying the [suspension] or-

der, where fundamental jurisdictional questions have been raised." *Montgomery Ward & Co. v. Zenith Radio Corp.*, 673 F.2d 1254, 1258 (CCPA), *cert. denied*, 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982). We turn, therefore, to the jurisdictional issue which is the heart of this appeal.

### IV.

### *Protest Jurisdiction of GSBCA Under the Brooks Act*

We conclude that in assuming jurisdiction over the subject protests, GSBCA exceeded its statutory jurisdiction. GSBCA plays a major role in the decisional system established by Congress in the Brooks Act, as amended by CICA. However, in this case, GSBCA prematurely entered the fray, disrupting the orderly procedure set out in the statute for resolution of ADPE disputes. The role of the GSBCA is statutorily limited to resolution of ADPE bid protests in which effective relief can be granted by GSBCA through its power to "suspend, revoke, or revise the procurement authority of the Administrator [of GSA] or the Administrator's delegation of procurement authority applicable to the challenged procurement." 40 U.S.C. § 759(h)(5)(B) (Supp. II 1984).

Pursuant to provisions of the Brooks Act (§ 759(a) and (b)), GSA is made the procuror of ADPE for all government agencies (with certain exceptions which need not be discussed here). More specifically:

ADPE is a special commodity. Federal agencies do not possess general procurement authority for ADPE. Under the Brooks Act, Pub.L. No. 89–306, 79 Stat. 1127 (1965) (codified as amended at 40 U.S.C. § 759 (1982)), procurement authority for ADPE is vested in the Administrator of General Services. Scientific and technological advisory services relating to ADPE are provided by the Secretary of Commerce, acting through the National Bureau of Standards, which publishes uniform Federal Information Processing Standards. 40 U.S.C. § 759(f) (1982).

Both of these authorities concerning ADPE resources are exercised subject to direction by the President and to fiscal and policy control exercised by the Office of Management and Budget. 40 U.S.C. § 759(g) (1982).

GSA exercises its exclusive procurement authority for ADPE resources by directly conducting ADPE procurements; by awarding requirements-type contracts and multiple award schedule contracts for general purpose ADPE, software, and maintenance services; and by delegating its procurement authority for individual procurements.[5]

No definition of ADPE is provided in the statute and that omission was intentional. S.Rep. No. 938, 89th Cong., 1st Sess. 32, *reprinted in* 1965 U.S.Code Cong. & Ad. News 3859, 3891; H.R.Rep. No. 802, 89th Cong., 1st Sess. 34 (1965). However, 40 U.S.C. § 759(g) provides, *inter alia:*

The authority conferred upon the Administrator and the Secretary of Commerce by this section shall be exercised subject to direction by the President and to fiscal and policy control exercised by the Office of Management and Budget. * * * The Administrator shall provide adequate notice to all agencies and other users concerned with respect to each proposed determination specifically affecting them or the automatic data processing equipment or components used by them. In the absence of mutual agreement between the Administrator and the agency or user concerned, such proposed determinations shall be subject to review and decision by the Office of Management and Budget unless the President otherwise directs.

GSA and GPO (as well as Justice) agree that, pursuant to the above provision, OMB is the arbiter of a dispute between GSA and an agency on whether a procurement involves ADPE and should be conducted pursuant to the GSA Administrator's authority under the Brooks Act.[6] In view of the first sentence of § 759(g) (quoted above), it must be noted that OMB is not limited in resolving such disputes to defining what constitutes an ADPE procurement, but may, to some extent, restrict the GSA Administrator's authority for reasons of policy. This authority has existed since 1965.

The broad responsibility of GSBCA under the Brooks Act is of recent vintage. Effective January 15, 1985, Section 2713 of CICA amended the Brooks Act to permit a protest to be filed with GSBCA by "an interested party in connection with any procurement conducted under the authority of this section (including procurements conducted under delegations of procurement authority)...." 40 U.S.C. § 759(h)(1) (Supp. II 1984). If the protest falls within that jurisdictional provision, GSBCA then "shall review any decision by a contracting officer alleged to violate a statute or regulation." *Id.*

■ In sum, we conclude the CICA amendment giving GSBCA expanded jurisdiction did not affect OMB's authority and that GSBCA erroneously held that it had jurisdiction over a protest of a procurement which was not conducted under the Brooks Act. By its terms the statute grants protest jurisdiction to GSBCA over "procurements conducted" under the Brooks Act, not those which *should have been conducted* under the Brooks Act. The language is unambiguous and the literal reading fits with the overall structure of the statutory scheme for settling ADPE disputes. Moreover, the broad reading of the statute adopted by GSBCA finds no express support in the legislative history of CICA. Thus, under normal principles of statutory

**5.** Phillips (Administrative Judge, GSBCA), A New Forum for Protests—*The GSBCA & Automated Data Processing Equipment Protests,* 1–2 presented to Judge Advocate General's School, U.S. Army, 1985 Government Contract Law Symposium.

**6.** OMB also took that position in resolving a dispute in 1976. Letter from OMB Deputy Director Paul H. O'Neill to GSA Administrator Jack Eckerd (December 9, 1976). Despite the intervening statutory amendments, OMB maintains that view in its April 9, 1986, ruling in connection with the subject contract.

construction, the words of the statute are controlling. *Consumer Products Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). These reasons are explained more fully below.

### A.

The board's discussion of the question of its jurisdiction was brief.[7] After discounting the role of OMB, it stated:

Once a protest is filed, part and parcel to this Board's protest authority is its ability to determine its jurisdiction, *which requires a finding as to whether the Brooks Act is applicable to the procurement.* This Board is not bound to OMB's view of the matter....

For purposes of defining this Board's jurisdiction, the proposed restrictive reading of the CICA to exclude any case in which a delegation is not sought by the procuring agency is tenuous at best. From a practical standpoint, this interpretation would permit an agency to intentionally ignore the requirements of the Brooks Act only to foist the argument upon this Board that we lack jurisdiction despite a clear and unmistakable statutory violation.

A reading of the Brooks Act also evidences the untenable nature of such an interpretation. The Brooks Act mandates that the Administrator of GSA, directly or by delegation, "coordinate and provide for the economic and efficient purchase, lease, and maintenance of automatic data processing equipment by Federal agencies." 40 U.S.C. § 759(a) (1982). Thus, a procurement involving the appropriate ADP resources comes within the authority of the Brooks Act. If an agency fails to obtain the required authority to procure the ADP, the statute is violated, but the failure to proceed within the parameters of the act in no way lessens its reach.

February 4 Order, slip op. at 14 (emphasis added). The board's answer to the jurisdictional question could be foretold by the way in which the question was phrased: i.e., "whether the Brooks Act is applicable to the procurement." That was not, however, the issue. The proper question flows from the statutory language: Was this a "procurement conducted under the authority of this section [759]"?

GSBCA's question, in effect, was directed to whether the GSA Administrator is doing *his* job properly. Has the Administrator exercised his full authority under the Brooks Act? However well-intentioned its actions, GSBCA has been given no general supervisory authority over the Administrator.

In a similar vein, protestor AT & T argues that the board's ADPE protest jurisdiction is *coextensive* with the Administrator's procurement authority and, thus, extends to all ADPE acquisitions no matter whether effected under the Brooks Act or not. One obvious flaw in this argument is that GSA's authority under the Brooks Act is subject to OMB, whose authority GSBCA does not recognize. To determine the relationship between the jurisdiction of GSBCA, the authority of the GSA Administrator, and the role of OMB, we must begin with the statutory language.

### B.

As a forum established by Congress, GSBCA's jurisdiction is limited strictly to the matters entrusted to it. *Civil Aeronautics Board v. Delta Air Lines, Inc.*, 367 U.S. 316, 322, 81 S.Ct. 1611, 1617, 6 L.Ed.2d 869 (1961) ("the Board is entirely a creature of Congress and the determinative question is not what the Board thinks it should do but what Congress has said it can do.")

Section 759(h)(1) is the pivotal section related to GSBCA's jurisdiction and the key language is "procurement conducted under the authority of this section." "[T]his section" means the Brooks Act. No party contends that the subject procurement was actually *conducted under* the Brooks Act via a delegation of GSA's authority to

---

**7.** The entirety of the board's analysis in this case appears in the quotation.

GPO. All parties here were engaged for over a year in the negotiations leading to the award. None of the protestors—all prospective bidders during that time—ever asserted that the contract was for ADPE or that GSA should have been involved. Protestors, nevertheless, argue that, if the contract is for ADPE, it has to be a "procurement conducted under the authority of this section" since any other procurement is forbidden. In other words, protestors read the statutory language to mean that GSBCA has jurisdiction in any instance where the procurement *should have been* conducted under the Brooks Act. Under that proposed interpretation, agencies would not know until after the fact, even with a ruling in advance by OMB, that they had "conducted" a Brooks Act procurement. To create such deliberate uncertainty in procurement appears facially unreasonable. Moreover, other provisions negate attributing the meaning "should have been conducted" to the statutory term "conducted."

Most compelling of other statutory provisions is the scope of the interim and ultimate remedial authority conferred on the board. All portions of a statute must be read together. *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1366 (Fed. Cir.1983). Unless a forum is merely advisory, its jurisdiction and its power to grant relief are two sides of the same coin. Thus, the remedy power expressly granted is a persuasive indication of its jurisdiction as well.[8]

Sections 759(h)(2) and (3) provide that under certain circumstances the board "shall suspend the procurement authority of the Administrator or the Administrator's delegation of procurement authority" during both pre-award and post-award protests. As the final remedy, § 759(h)(5)(B) similarly provides that, if the board determines that a violation has occurred, "the board may suspend, revoke, or revise the procurement authority of the Administra-

tor or the Administrator's delegation of procurement authority applicable to the challenged procurement." *See also* 40 U.S.C. § 759(h)(6)(B) (Supp. II 1984). The statutorily prescribed remedies are meaningless in the present case, since the Administrator neither exercised his authority nor delegated authority which could be suspended, revoked or revised by the board. Thus, no statutorily authorized remedy can be effected by the board. *See United States v. Amdahl Corporation,* 786 F.2d 387, 390 n. 3 (Fed.Cir.1986). To find an implied power to grant relief from an inferred grant of jurisdiction exceeds the bounds of permissible "interpretation" of the statute before us.

■ Another provision of the statute, Section 759(h)(6)(C) (Supp. II 1984), provides that "the procedures set forth in this subsection *shall only apply* to procurements conducted under the authority contained in this section." (Emphasis added.) The provision at first appears to be redundant with the first paragraph granting jurisdiction until, on closer reading, one notes the word "only." Such emphasis can mean only that jurisdiction is to be strictly construed. Since protest jurisdiction is a waiver of sovereign immunity, a strict reading would, in any event, be required. *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *Bennett v. Department of the Navy,* 699 F.2d 1140, 1145 (Fed.Cir.1983). Extending GSBCA's jurisdiction to procurements that protestors claim should have been conducted pursuant to the Brooks Act, but in fact were not, would run counter to both the explicit statutory provision and to that principle of statutory jurisdiction.

■ Finally, the reliance of protestor AT & T on the statutory language that the board "shall review any decision by a contracting officer alleged to violate a statute or regulation" (§ 759(h)(1)) as a grant of *jurisdiction* is misplaced. That language clearly defines the scope of board review

---

**8.** Indeed, a claim seeking relief only beyond that which may be granted will negate jurisdiction. *Hahn v. United States,* 757 F.2d 581, 586–

88 (3d Cir.1985); *Investment Co. Institute v. FDIC,* 728 F.2d at 525.

once jurisdiction is established, not the scope of jurisdiction itself.

## C.

While the language of § 759(h) on this jurisdictional point appears sufficiently clear to make unnecessary any resort to the legislative history, that history fully confirms the literal reading of the text. The amendment to the Brooks Act to give GSBCA expanded jurisdiction over protests originated in the House; the Senate-passed bill contained no comparable provision. The Report of the House Committee on Government Operations, submitted by Representative Brooks, described the bill as establishing this Board's jurisdiction "for resolving vendors' complaints concerning procurements *conducted* under Section 111 of the Federal Property and Administrative Services Act of 1949 (the Brooks Act, P.L. 89–306)." H.R.Rep. No. 1157, 98th Cong., 2d Sess. 25 (1984) (emphasis added). The Committee explained the board's interim suspension and ultimate remedial authority in terms consistent with the enacted language. *Id.* at 26.

The Conference Committee on CICA accepted the House bill establishing ADPE bid protest jurisdiction in GSBCA. The Conference Report makes clear in several passages that "[t]his provision applies only to those automated data processing procurements *conducted* under the Brooks Act." H.R.Rep. No. 861, 98th Cong., 2d Sess. 1430 *reprinted in* 1984 U.S.Code Cong. & Ad.News 1445, 2118 (emphasis added).

To support an expansive reading of GSBCA's jurisdiction, protestors point to statements in the *1965* legislative history to the effect that the Brooks Act was drafted broadly with respect to its coverage. *A fortiori*, such statements relate only to the authority of the Administrator, not GSBCA.

Thus, the legislative history of CICA is consistent with the literal reading of the statutory language.

## D.

Limiting the board's jurisdiction to protests challenging a procurement actually conducted under the authority of the Brooks Act is consistent with OMB's statutory responsibility for determining the *government's* position on the applicability of the Brooks Act. From its inception, the Brooks Act has contemplated that OMB would resolve Brooks Act-related conflicts between GSA and affected agencies.

■ The Administrator does not dispute that OMB's authority to resolve inter-agency disputes under the Brooks Act encompasses the authority to resolve a disagreement between a procuring agency and GSA as to whether a procurement is subject to the Brooks Act. Indeed, in 1976, OMB ruled that an inter-agency disagreement as to whether a procurement is subject to the Brooks Act "is a disagreement susceptible of resolution by OMB pursuant to Section 111(g) [40 U.S.C. § 759(g)] authority." *Supra* note 6. In that ruling, OMB explained that its resolution of such disputes involves both the issue of statutory interpretation and, to the extent consistent with congressional intent, review of the question from a current fiscal and policy perspective. *Id.*

■ Under the Brooks Act, GSA has broad authority "to coordinate and provide for the economic and efficient purchase, lease, and maintenance of automatic data processing equipment by Federal agencies." 40 U.S.C. § 759(a) (1982). However, OMB, as the foremost government authority on fiscal matters, has express authority over GSA's administration of its Brooks Act responsibilities. Specifically, 40 U.S.C. § 759(g) (1982) not only grants OMB the above noted authority to resolve inter-agency disputes, but also specifically provides that the "authority conferred upon" GSA by the Brooks Act "shall be exercised subject to direction by the President and to fiscal and policy control exercised by the Office of Management and Budget." In short, it is clear that GSA, in exercising its

authority under the Brooks Act, is subject to the control of OMB and the President.[9]

In this case, OMB has decided that the 600–S procurement was not subject to the Brooks Act. Once GPO learned in the course of the GSBCA proceeding that GSA disagreed with GPO regarding the applicability of the Brooks Act to the 600–S procurement, GPO wrote to the OMB asking it to exercise its inter-agency dispute resolution authority under the Brooks Act. OMB assumed jurisdiction and has resolved the matter in GPO's favor.

■ On the other hand, GSBCA correctly stated that its jurisdiction is not determinable by OMB but by this court. February 4 Order, slip op. at 14. This court would create an irreconcilable conflict by ruling that GSBCA has authority to decide whether a procurement is one which should have been conducted under the Brooks Act. A decision by GSBCA that the Brooks Act should apply to the procurement could not possibly take into account the discretionary factors on which OMB may rely. Thus, two different resolutions could well result, given a patent difference in standards for resolving the question. That conflict in itself counsels against stretching the statutory language.

Moreover, the recognition of dual authority to determine when the Brooks Act is applicable would be a fiction. GSBCA's authority would override that of OMB and, in effect, nullify it. Congress, however, expressed no intent to take away OMB's prior role by the 1984 CICA amendment. On the contrary, the House Report states that *"[w]ith regard to OMB's authorities*

*under the Brooks Act, the bill does not alter the current procedures for resolving conflicts between procuring agencies and GSA's procurement office....*" H.R.Rep. No. 1157, *supra* at 27 (emphasis added). Thus, the Committee indicated its understanding that inter-agency jurisdictional disputes would be resolved by OMB and that the binding effect of an OMB determination within the government would not be affected by CICA.

■ Protestor AT & T sees in § 759(g) the grant of a *right to protestors to have* GSBCA decide all disputes under the Brooks Act. We rejected a similar argument in *Amdahl*, 786 F.2d at 395. (GSBCA does not sit to resolve all disputes under ADPE contract). The jurisdiction of GSBCA is clearly not so broad. With the pervasiveness of ADP equipment and services and the imagination of the bar, one could foresee a challenge before GSBCA to the bulk of government contracts on the ground that the procurement should have been under the Brooks Act. Indeed, in this case, it is asserted that the Brooks Act is implicated because *the contractor* will utilize ADPE in its performance.[10]

Protestor Xerox argues that OMB has no authority to issue any decision relating to this protest. That argument is irrelevant. It provides no rationale for saying *GSBCA* must have jurisdiction. The district courts and other forums remain open for protests and § 759(g)(6)(C) specifically provides, *inter alia:*

> In addition, nothing contained in this subsection shall affect the right of any interested party to file a protest with the

---

9. The legislative history of the Brooks Act makes clear that the authority conferred on GSA by the Act "shall be exercised subject to direction by the President and by the Bureau of the Budget [now OMB]." S.Rep. No. 938, 89th Cong., 1st Sess. 37, *reprinted in* 1965 U.S.Code Cong. & Ad.News 3859, 3895. The legislative history also consistently recognizes OMB's broad authority to resolve all disagreements between procuring agencies and GSA. Thus, the Senate Report states: "the bill maintains BOB's [now OMB's] traditional control over fiscal and policy matters. *Action by any agency under this legislation would be subject either to approval or*

*review by BOB.*" (Emphasis added.) *Id.* at 3861.

10. We do not decide here to what extent disappointed bidders may legitimately challenge an award solely on the ground that a procurement should have been under the Brooks Act where GSA and an agency agree it need not be. By giving GSA coordination authority for procuring ADPE, the statute was designed to benefit *the government* and the public fisc (as Xerox itself explains in detail in its brief), not simply to create new grounds for litigation.

contracting agency or to file an action in a district court of the United States or the United States Claims Court.

Nor can we see that the parade of procurement horrors recited by Xerox would be effectively avoided by holding the spectre of a GSBCA decision on a protest over the heads of agencies and the Administrator, rather than a decision from another forum. If Congress sees the matter differently, Congress can change the way the statute is written. The statute provides for only a three year experiment ending January 15, 1988, during which time GSBCA has been given the special protest jurisdiction under review here. The matter must be taken up by Congress, in any event, if the jurisdiction of GSBCA over Brooks Act protests is to continue.

 Only by wholesale re-writing of the statute, with respect to jurisdiction and remedial powers of GSBCA, could it be held that a procurement which *should have* been procured under the Brooks Act can be challenged before GSBCA. We decline to undertake that task. We see nothing in the statute or the legislative history leading us to conclude that Congress intended such an objection to be the jurisdictional basis for a protest to GSBCA.

## V.

### *Conclusion*

We reverse the decision of GSBCA and hold that GSBCA had no jurisdiction over the subject protest. All decisions and orders of GSBCA in these proceedings are vacated. The case is remanded to GSBCA with the instruction to dismiss.

REVERSED, VACATED, REMANDED WITH INSTRUCTION TO DISMISS.